## ZAGELMEYER v. LAUGHRAY CONCRETE BRICK CO.

1. Contracts—Patents—Inventions — Specific Performance — Assignments.

   In a suit for the specific enforcement of a contract to assign to a corporation, which the parties were engaged in promoting, any improvements and inventions the parties might thereafter make in brickmaking machines or in concrete for making brick, a decree requiring the assignment to the company of a subsequently acquired patent of an invention discovered by the promissors in the contract, relating to the subject-matter of their original patent, was within the rule permitting such contracts to be enforced when the subject-matter of the inventions is described and made definite.[1]

2. Insolvency—Patents—Corporations—Creditors' Rights.

   The president of the corporation, having no lien upon any of its assets, was not entitled to a preference over other creditors of the corporation out of the proceeds of the sale of such patent under the order of the court after the insolvency of the company.

Appeal from Bay; Collins, J.  Submitted April 6, 1911.  (Docket No. 32.)  Decided November 3, 1911. Rehearing denied June 1, 1912.

---

[1]Agreement to assign future inventions on sale of patent, see note in 2 L. R. A. (N. S.) 1094.

Bill by Alexander Zagelmeyer against the Laughray Concrete Brick Machine Company, Robert Laughray, G. Frederick Laughray, and Edward Laughray, for specific performance of a contract to convey certain patents. From a decree for complainant, defendants appeal. Modified and affirmed.

*Lee E. Joslyn,* for complainant.

*Brakie J. Orr,* for defendants.

BIRD, J. The prayer of the bill of complaint in this cause prayed for the specific performance of a contract made by the complainant with the defendants Laughray. The relief prayed for was granted by the trial court, and the defendants Laughray have appealed.

The defendant corporation, a domestic one, was organized in April, 1906, the principal object of which was the manufacturing and selling of brick and brick machinery. The complainant and defendants Laughray were the incorporators and stockholders. For upwards of two years prior to the incorporation of the company, the complainant and defendants worked together under a copartnership agreement, the complainant furnishing the money and the defendants the inventive genius in an effort to perfect an improved machine for making brick. Just prior to the incorporation of the company, but while it was in contemplation, the parties made a contract, the material portions of which are as follows:

"Witnesseth, that whereas the parties hereto are about organizing a corporation under the laws of Michigan, under the name of Laughray Concrete Brick Machine Company, with a paid in capital stock of $25,000.00, of which each of the parties hereto subscribes for and owns 625 shares of the par value of $10.00 a share, and whereas as part of the capital stock there will be assigned to the corporation the Laughray patents, United States No. 747,443, dated Dec. 22, 1903, Canadian No. 92,237, dated Mch. 21, 1905, and pending application for patent in the United States patent office: Now, therefore, in consider-

ation of the premises and of one dollar by each to the other in hand interchangeably paid, it is hereby covenanted and agreed by and between the parties hereto as follows, viz.:

"(1) That each of the parties hereto will assign to said corporation any improvements or inventions he has or hereafter may make in brick-making machines, or in concrete for making brick and blocks.

"(2) That the corporation will, out of the first money it shall receive, pay to Alexander Zagelmeyer certain advances made by him amounting to $4,000.00 or thereabouts, which will adjust the accounts between the parties hereto."

This contract was ratified by the stockholders of the corporation at its first meeting. Patent No. 747,443 was assigned to the company in accordance with the agreement, but the application for a patent was never signed, and subsequently was withdrawn. The parties worked in harmony for a time, and complainant advanced more money to meet the needs of the business. It was later demonstrated that the patent which had been assigned to the company was of little value. After this, the defendants appeared to lose their interest in the enterprise, and gave little attention to its affairs. Complainant refused to advance any more money to the company. Machinery which had been purchased was turned back to the vendors, and other assets of the company were levied upon and sold by creditors. The company became insolvent. In August, 1907, another patent, No. 862,259, was issued to R. E. and G. F. Laughray on a machine for making cement brick. It was insisted by complainant that this patent should be assigned to the company, but the defendants refused to assign it, and this suit was begun to enforce it. After a hearing, the trial court held that the patent was embraced within the terms of the contract, and ordered defendants to assign it to the company. A receiver was appointed, and he was ordered to sell the patent at public sale, and the decree provided that the proceeds should be distributed as follows:

" (a) He shall first pay the costs and expenses of such sale, including his fees thereon.

" (b) He shall pay to Alexander Zagelmeyer, or his solicitor, the costs and expenses of this suit, to be taxed.

" (c) He shall pay to Alexander Zagelmeyer, or his solicitor, four thousand dollars ($4,000.00), if there be sufficient to pay the same.

" (d) The balance of the moneys arising from said sale, if any there be, shall be paid to the register of this court, subject to the further order and decree of the court herein."

The defendants attack the decree on the following grounds:

" (1) Complainant does not come into court with clean hands.

" (2) The decree is not in accordance with law and equity, and, instead of following the law, departs from and is contrary to it.

" (3) Because of the inequitable and tortious conduct and actions of complainant, he is not entitled to equity. ' He who seeks equity must do equity.'

" (4) The conduct and action of complainant, even though not intended as such, tended to and did work a fraud upon defendants, and such can never be the foundation of an equitable right.

" (5) Complainant could not proceed in this cause, until he has first obtained judgment or decree, execution issued thereupon, and returned unsatisfied, as a foundation therefor.

" (6) The patent which complainant claims was the subject of the contract, Exhibit A, not being discovered or the discovery contemplated at the time of the execution of the contract, and not being related to the patents assigned, as an improvement or otherwise, could not be the subject of the contract; that is to say, having no existence, potential, or otherwise, there could be no contract relative to it.

" (7) The defendants, nor any or either thereof, never had or received or retained any benefit of or from the machinery, etc., for which complainant now makes claim, nor have they or any or either such machinery or any part thereof, nor did they or any or either ever dispose of the same or part thereof, or give consent thereto.

" (8) The patent, afterwards discovered, having no re-

lation to the one assigned, was not, nor could it be, the subject of the contract."

Objections 1, 3, 4, and 7 relate to questions of fact passed upon by the trial court. Defendant's counsel makes many charges of bad faith on the part of complainant based on his cross-examination.  A careful reading of complainant's testimony convinces us that he entered into the business in good faith, put his money into it to an amount in excess of $4,000, and worked for the general welfare of the company as long as the defendants cooperated with him.  Later, when it became evident that the project was a failure, the complainant did not give the attention to the corporate business which his position as president demanded of him, but the defendants were officers also, and they were less attentive than complainant, and are in no position to complain of complainant in that regard.  We think the trial court reached the right conclusion on the questions of fact.

Objections 6 and 8 raise the question that the contract to assign to the corporation future patents and improvements was void, and not enforceable.  It has been held that an agreement to assign all future inventions was not enforceable (30 Cyc. p. 945), but an agreement to assign future patents is enforceable if the subject-matter of the inventions is described and made definite (*Id.* p. 944).

In one of the reported cases where the agreement to assign was general, the contract was held enforceable as to patents which related to the particular business in which the parties were engaged. *Bates Machine Co.* v. *Bates,* 192 Ill. 138 (61 N. E. 518).  The contract under consideration was definite and was restricted to inventions or improvements relating to brick-making machinery.  This would clearly bring it within the rule which permits such contracts to be enforced.

We are of the opinion that the trial court reached a right conclusion, and that the decree should be affirmed save as to that part which provides:

"(c) He shall pay to Alexander Zagelmeyer, or his solicitor, four thousand dollars, if there be sufficient to pay the same."

The complainant was a creditor, but he had no lien on the patent, nor would he have on the proceeds of it. He had no preference which other creditors of the company were bound to respect. As the record discloses that there are other creditors, they should be given an opportunity to intervene and participate in the fund as their respective rights may appear.

The decree will be modified in this respect and affirmed. The complainant will recover his costs in this court.

OSTRANDER, C. J., and MOORE, MCALVAY, and BROOKE, JJ., concurred.