ROBERT G. ADAIR, APPELLANT, V. RALPH L. ADAIR ET AL., APPELLEES.

222 N. W. 2d 908

Filed November 7, 1974. No. 39431.

Francis D. Lee, for appellant.

Edward E. Hannon and Edward J. Welch, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

This is an action to foreclose a real estate mortgage.

The trial court found that there was no consideration for the mortgage and the note of $3,000 it purports to secure. The sole issue presented is the sufficiency of the evidence to sustain the judgment of the District Court for the defendants. We reverse the judgment.

The mortgage was dated and acknowledged on December 30, 1958. The promissory note was dated October 1, 1958, and the mortgage recorded on April 20, 1972. On September 8, 1958, the mother of plaintiff and the defendant Ralph L. Adair deeded a 320-acre farm to Ralph and Elsie Adair. A Federal Land Bank Association mortgage was obtained in the sum of $6,200. Of this amount the mother gave $3,515.44 to plaintiff and applied the balance on indebtedness to the Federal Land Bank. Plaintiff and defendant Ralph were the only boys in the family but had several sisters who were not involved in this transaction. Defendants Ralph and his wife Elsie plead that there was no consideration for the note and mortgage of $3,000. Plaintiff admits that he personally gave them nothing in return but insists that his mother required Ralph to pay enough more than the $3,515.44 to make $7,000. Ralph did pay an additional $900 directly to plaintiff prior to the execution of the note and mortgage in question, making $4,415.44 received by plaintiff. This sum, together with the $3,000 note, exceeds the $7,000 he insists he was to receive.

The evidence is contradictory and plaintiff contradicts his own testimony. He states that his mother and brother asked him if it was all right for Ralph to buy the farm and that he consented. When asked: "Did his mother make him promise to give you this money?", plaintiff said, "I don't think so. No." He was also asked: "What I want to know, what did you give to him to get this mortgage?" He replied: "I did not give him a damn thing." Other excerpts from the plaintiff's testimony are as follows: "Now, then, what was the occasion or why did they give you this promis-

sory note? Why did they sign it?" Answer: "Well, I don't know. The kid bought the place. * * * And what about this? * * * So they asked me if I would take a mortgage so what he could not pay out what I had coming. * * * What you had coming — where did you have something coming from? * * * Mother sold the place to him and give him so much and me so much and she kept so much. * * * And what did you say to Ralph Adair with regard to the note and mortgages, or how did you elicit them from him? * * * Well, I said it didn't make any difference to me. I said, yes, I will pack him. * * * What do you mean pack him? * * * Well, I would finance him. I did not need the money, see. * * * Your mother did not require him to pay you $7,000, did she? * * * No, but it was all in the deal. * * * Whose deal? * * * His and mother's."

The deed recites a consideration of $12,000 although it is conceded that the appraised value of the land was $75 per acre, or $24,000. When asked why he was supposed to get $7,000, plaintiff stated: "Well, she wanted to give her two boys something, I suppose. * * * I think they came over and asked me if it would be all right if he bought the place and if they gave me $7,000 and she get so much and then he could have the rest of it. * * * And how did you arrive at the $7,000 you were to receive? * * * Don't ask me. That is just what they came up with. They told me I would get $7,000, * * *."

In 1972 Ralph signed a renewal note and mortgage but his wife refused to sign them. Ralph died prior to trial and the mother, although competent and available, did not testify. Ralph's wife Elsie stated the mother told plaintiff that she had turned the place over to Ralph and that she was going to give plaintiff the money; and that plaintiff received the Federal Land Bank check for $3,515.44 and did not ask for more.

Execution of the note and mortgage was established

by the evidence of the notary who drew them. Under section 3-307 (2), U. C. C., when signatures on commercial paper are established, the burden of establishing a defense is on the defendant makers. As an action in equity, the case must be considered de novo on appeal with due regard for the fact that the trial court heard and saw the witnesses. Although the evidence of the plaintiff regarding consideration is of a wandering nature, the defendant Elsie Adair indirectly verifies the fact that plaintiff was consulted about the sale, was informed that he would receive some money from it, and consented to it. The evidence, taken as a whole, indicates that Ralph was to give the note and mortgage to plaintiff as part of the consideration for the sale of the farm to him by his mother. The fact that defendants Ralph and Elsie Adair executed and delivered these instruments is a strong indication, in the absence of any other explanation, that it was required by Ralph's mother to equalize treatment of her two sons. The farm was sold for half of its appraised value and according to the evidence the only money actually paid to the mother was $5,890 of which $3,515.44 was given to plaintiff. We do not believe defendant Elsie Adair has met her burden of proof in regard to her defense of no consideration.

A "consideration" for an agreement requires that there be a benefit on one side, or a detriment suffered or a service done on the other but the benefit rendered need not be to the party contracting but may be to any one else at his procurement or request. Plastray Corp. v. Cole, 324 Mich. 433, 37 N. W. 2d 162. See, also, 17 Am. Jur. 2d, Contracts, § 94, p. 437.

The judgment of the District Court is reversed and the cause remanded with directions to enter a decree of foreclosure for plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.