SANDS APPLIANCE SERVICES, INC v WILSON

Docket No. 113125. Argued May 3, 2000 (Calendar No. 2). Decided
July 31, 2000. Rehearing denied *post*, 1211.

Sands Appliance Services, Inc., hired Christopher Wilson as an appli-
ance repairman in 1992. As a condition of employment, it required
him to sign a tuition contract that provided that, in consideration of
job training, he would remain in Sands' employ for six years or,
upon termination, would remit in full weekly tuition payments for
the remainder of the term. When Mr. Wilson quit Sands' employ
after two and a half years, Sands brought an action in the 16th
Judicial District Court, against Mr. Wilson, alleging breach of the
tuition contract. The court, Robert B. Brzezinski, J., directed a ver-
dict for the defendant, declaring the contract illegal and void and
finding no cause of action. The Wayne Circuit Court, Michael J.
Callahan, J., affirmed. The Court of Appeals, MARKEY, P.J., and
HOEKSTRA, J. (BANDSTRA, J., dissenting), reversed. 231 Mich App 405
(1998) (Docket No. 190270). The defendant appeals.

In an opinion by Justice KELLY, joined by Chief Justice WEAVER,
and Justices CAVANAGH, TAYLOR, and MARKMAN, the Supreme Court
*held*:

The tuition contract was void and unenforceable under both
MCL 408.478(1); MSA 17.277(8)(1) and 1982 AACS, R 408.9011.

1. MCR 2.118(A)(2) states that a court may grant leave to a party
to amend a pleading and that, when justice requires, leave shall be
given freely. In this case, justice allowed the amendment because
courts have a duty to refuse to enforce a contract that is contrary
to public policy. If the contract violated the statute, it violated
Michigan public policy. Moreover, even absent the compelling pub-
lic policy concern, a motion to amend ordinarily should be allowed
unless there is undue delay, bad faith or dilatory motive on the part
of the movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party, or futil-
ity. Such conditions are not found in this case, nor does the plain-
tiff claim that they exist.

2. MCL 408.478(1); MSA 17.277(8)(1) and 1982 AACS, R 408.9011
bar employment contracts that require remuneration from an
employee. Regardless of whether the obligation in the tuition con-

tract is a fee or a bond, it was other remuneration or consideration, and it was required of the defendant as a condition of his employment. The statutory doctrine of ejusdem generis, i.e., that following a designation of particular subjects, the meaning of general words ordinarily will be presumed to include only things of the same kind, class, character, or nature as those specifically enumerated, supports this conclusion. The tuition contract was a condition of employment. The defendant could not work for the plaintiff without submitting to its repayment scheme. The defendant was not given the option to obtain the necessary training from an alternate source, such as a private trade school.

Reversed.

Justice YOUNG, joined by Justice CORRIGAN, dissenting, stated that because the terms of the tuition contract clearly do not resemble a fee, gift, tip, gratuity, or other remuneration or consideration, the contract does not violate subsection 8(1).

As a condition of employment, the plaintiff required the nineteen-year-old defendant to agree either to work for six years or to pay for some part of the cost of the training that was provided to him. The majority's conclusion, that this independent agreement is a consideration in the nature of a fee, gift, tip, or gratuity, does not square with a natural reading of these more specific, but ordinary, statutory terms. Fees, gifts, tips, and gratuities all connote something given to an employer for which the employee, other than the job itself, gets nothing in return. While the statute plainly seeks to prevent employers from selling jobs by extracting things of value from an employee as a condition of employment or continued employment, the parties' tuition contract is far different and is not in any ordinary sense a gift. In return for his agreement to the terms of the tuition contract, the defendant received something valuable separate and apart from a job: extensive training in appliance repair that allowed him to progress from making $7 an hour to $50,000 annually in two and a half years. Whether plaintiff also received a benefit is irrelevant because this commitment was not in the nature of a fee, gift, tip, or gratuity. Once the majority's reliance on an unexpressed legislative intent is cast aside, it becomes obvious that the agreement does not even remotely resemble a fee, gift, tip, or gratuity given in exchange for the privilege of employment. Rather, it is an agreement designed merely to ensure that an employer's costs will be at least partially offset in the event that an employee who has been heavily subsidized in his training leaves the employment before those subsidies can be fully amortized.

*Thomas H. O'Connor* and *Mary Jo Diegel* for the plaintiff-appellee.

*Dean Koulouras* (*John A. Lydick*, of counsel), for the defendant-appellant.

Amicus Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Christine A. Derdarian*, Assistant Attorney General in Charge, for Labor Division.

KELLY, J. The issue in this case is whether the "TUITION CONTRACT" that plaintiff-employer, Sands Appliance Services, Inc., required defendant, Christopher Wilson, to sign before he began employment was void and unenforceable. Defendant asserts that plaintiff violated subsection 8(1) of the wage and fringe benefits act (WFBA)[1] and the accompanying administrative rule, 1982 AACS, R 408.9011. The district and circuit courts found for the defendant. The Court of Appeals reversed in a split decision. 231 Mich App 405, 421; 587 NW2d 814 (1998). We hold that the contract did violate the statute and administrative rule and, accordingly, reverse the Court of Appeals and reinstate the judgments of the district and circuit courts.

---

[1] Subsection 8(1) states:

An employer, agent or representative of an employer, or other person having authority from the employer to hire, employ, or direct the services of other persons in the employment of the employer shall not demand or receive, directly or indirectly from an employee, a fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment. This subsection does not apply to fees collected by an employment agency licensed under the laws of this state. [MCL 408.478(1); MSA 17.277(8)(1).]

I. FACTS AND PROCEDURAL BACKGROUND

The undisputed facts of this case were established entirely through the testimony of Ralph Parry, the sole owner of plaintiff and sole witness at the district court bench trial.

Defendant, when nineteen years old, responded to plaintiff's newspaper advertisement seeking entry-level appliance repair people. He was employed at that time and had acquired limited experience in appliance repair. In speaking with Mr. Parry, defendant indicated a desire to leave his current employment and work for plaintiff, so that he could become a "full-fledged, on-the-road appliance technician." On May 11, 1992, plaintiff hired defendant at an hourly wage of $7.00.

Plaintiff required defendant to sign the following document before beginning his employment:

TUITION CONTRACT

I Christopher Wilson in consideration for job training, either formal or informal; either instructed or non-instructed; either learning by doing or observing; (at the sole discretion of Sands Appliance Service management) agree and promise to pay to Sands Appliance Service the sum of $50.00 per week, beginning the 11th day of May, 1992; and continuing each week for a period of three years, (a total of 156 weeks at $50.00 per week) at the end of the three year training period. It is agreed by Sands Appliance Service that each week of continued employment by Christopher Wilson will serve as payment for one week of the previous training period.

Therefore, at the end of six years total employment, (both as a trainee and as a graduate of training), this training shall be considered paid for in full. In the event of the termination of employment of Christopher Wilson for any reason, the tuition payments owed at that time are to be

paid in full in U.S. Currency within a period of 7 days from the termination date.

Sands Appliance Service, as employer, accepts the Tuition Contract to help educate, formally or informally, the employee in the business of appliance service and/or sales. The term of this contract shall be as set forth above. However, at any time the employer may review the status of the employee and upon determination by the employer, in its sole and uncontrolled discretion[, that] the best interest of the employer would be served by a termination of this contract, then the employer may terminate this agreement upon written notice to the employee.

Mr. Parry testified that his intended purpose in having defendant sign the contract was to ensure that defendant stay in his company's employ for at least six years:

[T]he reason I have this contract, which was started in 1985, is because I would train people and they would turn right around and either become my competitor, and a lot of them—after a couple of years, it was—it was going to break me trying to train people.

And I decided I needed something to—to make sure people were in earnest about wanting to learn the job and be willing to at least work there long enough where I could recoup my expenses in so doing.

Two and a half years later, defendant quit plaintiff's employ. By then, he was earning approximately $50,000 a year. Plaintiff filed a lawsuit for breach of the tuition contract, seeking $6,500 in damages ($50 × 130 weeks) from defendant.

Defendant moved for a "directed verdict,"[2] on the ground that the "tuition contract" was void because it

---

[2] Defendant's motion more accurately would be called a motion for involuntary dismissal. Such a motion is granted in a bench trial "when the

violated MCL 408.478(1); MSA 17.277(8)(1). Defendant argued that the contract also violated the parallel administrative rule, 1982 AACS, R 408.9011.[3]

Plaintiff countered that the only purpose of the tuition contract was to recoup costs of training new appliance service technicians. Hence, these provisions were inapplicable.

The district court granted defendant's motion, stating:

> The end result of this contract was solely to keep somebody there with this hanging over his head. It's a debenture of $6,500.00. It's void. It's illegal. I find no cause for action. The case is dismissed.

On appeal from the circuit court affirmance, the Court of Appeals reversed, rejecting plaintiff's argument that defendant's failure to cite the statute and regulation in its affirmative defenses precluded their being considered. It found that plaintiff's rejection of

---

court is satisfied after the presentation of the plaintiff's evidence that 'on the facts and the law the plaintiff has shown no right to relief.' MCR 2.504(B)(2) . . . ." *Sands, supra* at 409.

[3] (1) An employer or representative of an employer shall not demand or receive, directly or indirectly, from an employee, any of the following as a condition of hire or continuation of employment:

(a) Fees, gifts, tips, or gratuities.

(b) Security deposits.

(c) Bonds to ensure that the employee completes the employment period.

(d) Uniforms required by the employer as specified in subrule (2) of this rule.

(e) Equipment required by employer as specified in subrule (3) of this rule.

(f) Other forms of remuneration or considerations. [1982 AACS, R 408.9011, rescinded by 1998 MR 1, effective February 11, 1998.]

the trial court's offer of additional time and its failure to show prejudice waived the issue.

In interpreting the language of the statute and regulation, the Court of Appeals relied on the history of § 351 of the California Labor Code. It concluded that the Michigan Legislature's intent in enacting subsection 8(1) of the WFBA mirrored the California Legislature's intent in its 1929 enactment of an antecedent to § 351.

The Court of Appeals found that, even assuming that the reimbursement plaintiff sought under the tuition contract constituted "remuneration or consideration" under the statute, the tuition contract did not run afoul of the statute. The statute by its wording clearly applied to prospective or current employees, not former employees.

Moreover, the Court of Appeals found that the tuition contract did not differ from other permissible provisions frequently agreed to by employees, such as an employee's obligation (1) to reimburse the employer for personal telephone calls or (2) to reimburse an employer for tools the employer provided if the employee left employment and took the tools with him.

The dissenting judge would have affirmed the lower courts' ruling that the contract was void and unenforceable. He reasoned that the statute's broad language evidenced "a legislative intent that the prohibition should apply to any occasion where an employee must, in any fashion, make payment or provide some sort of consideration to an employer for the privilege of employment." *Sands, supra* at 421. Although the dissenter agreed with the majority that his interpretation might represent bad public policy, he found that

the language of the statute required it. He rejected as inapposite the majority's reliance on California precedents construing a similar provision in the California Labor Code.

After initially denying defendant's application for leave to appeal, we granted leave to appeal on reconsideration. 461 Mich 948 (2000).

## II. STANDARD OF REVIEW

Contract interpretation and statutory interpretation involve issues of law that are subject to de novo review by this Court. *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998); *Alex v Wildfong*, 460 Mich 10, 21; 594 NW2d 469 (1999). We reverse a trial court's findings of fact only if they are clearly erroneous. *DiFranco v Pickard*, 427 Mich 32, 58-59; 398 NW2d 896 (1986).

## III. ANALYSIS

### A. SHOULD THE LATE FILING OF AN AFFIRMATIVE DEFENSE HAVE BEEN ALLOWED?

During proceedings before the trial court, defendant sought dismissal on the basis of the statute and regulation. Plaintiff objected, arguing that they constituted affirmative defenses and that the failure to plead them in the answer to the complaint constituted a waiver.[4] The court allowed the amendment

---

[4] Defendant's affirmative defenses did not specifically cite the statute or regulation but did claim

> [t]hat the alleged contract is void and unenforceable as a matter of public policy because it is patently unfair on its face, and is merely designed to be a penalty for the Defendant leaving the employment of the Plaintiff.

but offered plaintiff additional time to research and respond. Plaintiff rejected the offer, saying it would be useless, because no cases interpreted the provisions.

Plaintiff is correct that MCR 2.111(F)(3) provides that affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. However, MCR 2.118(A)(2) states that the court may grant leave to a party to amend a pleading and that, when justice requires it, leave shall be given freely.

We find that justice required allowance of the amendment here, because courts have a duty to refuse to enforce a contract that is contrary to public policy. *Manning v Bishop of Marquette*, 345 Mich 130, 133-134; 76 NW2d 75 (1956).[5] If the contract violated the statute, it violated Michigan public policy.

Moreover, even absent the compelling public policy concern, a motion to amend ordinarily should be granted, unless one of the following particularized reasons exists:

> "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice[6] to the opposing party by virtue of allowance of the amend-

---

[5] We allow an issue to be raised for the first time on appeal if persuaded that its consideration "is necessary to a proper determination of a case." *Prudential Ins Co v Cusick*, 369 Mich 269, 290; 120 NW2d 1 (1963). We find no error in the district court allowing defendant to raise the affirmative defense of the statute and regulation at the trial court level. It is necessary to a proper determination of the case.

[6] Prejudice to a party that will justify denial of leave to amend is prejudice that arises when the amendment would prevent the party from having a fair trial. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). It must stem from the fact that the new allegations are offered late, not that they might cause a party to lose on the merits. *Id.*

ment, [and 5] futility . . . ." [*Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973).]

These conditions are not found here, nor does plaintiff claim that they exist. Thus, we agree with the Court of Appeals conclusion that permitted the affirmative defenses to be raised belatedly.

### B. DOES THE TUITION CONTRACT VIOLATE THE STATUTE?

The key question in this case is whether the "fee, gift, tip, gratuity, or other remuneration or consideration" language of subsection 8(1) of the WFBA invalidates the contract that defendant was obliged to sign to secure employment with plaintiff. Section 1, which defines other terms in the WFBA, does not define these terms.

Where the Legislature has not expressly defined the terms used in a statute, this Court may turn to dictionary definitions "to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings."[7] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). In interpreting the language of a statute, it is appropriate to consult a lay dictionary when defining common words or phrases that have not acquired a unique meaning at law. This is because the common and approved usage of a nonlegal term is most likely to be found in a stan-

---

[7] In interpreting the statute and labor regulation at issue, the Court of Appeals majority relied on the history of § 351 of the California Labor Code. There is no need to reflect on California's interpretation of its statute, because our own statute speaks for itself. Examining California's legislation would be relevant only if our statute were ambiguous. In addition, we agree with the Court of Appeals dissenter that nothing indicates that our Legislature considered § 351 of the California Labor Code or its interpretation in enacting subsection 8(1).

dard dictionary, not in a legal dictionary. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). See also *Consumers Power Co v Public Service Comm*, 460 Mich 148, 163, n 10; 596 NW2d 126 (1999), and MCL 8.3a; MSA 2.212(1).

Plaintiff argues that the language of subsection 8(1) of the WFBA evinces a legislative purpose to prohibit the selling of jobs. We agree. However, its use of broader language here indicates a design to do more: to prevent kickbacks or payments of any kind to an employer in return for employment or its continuation.

We consider the words that the Legislature used. The most relevant definitions of "fee," "gift," "tip," and "gratuity" from *Random House Webster's College Dictionary*, as applicable here, are as follows: "fee" is defined as "a sum charged or paid, as for professional services or for a privilege"; "gift" is defined as "something given voluntarily without payment in return"; "tip" is defined as "gratuity"; and "gratuity" is defined as "something given without claim or demand." Fee, gift, tip, and gratuity are words that suggest values or benefits flowing to the employer, in addition to the wage-for-work exchange common to almost any employment arrangement.

The statute also contains a general "catch-all" prohibition of "other remuneration or consideration." According to *Random House Webster's College Dictionary*, "remuneration" is "reward," "pay." "Consideration" is a legal term and has acquired a unique meaning under the law. It is

> [t]he inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. The reason or material cause of a con-

tract. Some right, interest, profit or benefit accruing to one
party, or some forbearance, detriment, loss, or responsibil-
ity, given, suffered, or undertaken by the other. [Black's
Law Dictionary (6th ed), p 306.]

[C]onsideration for agreements [exists where there is] a
benefit on one side, or a detriment suffered, or service done
on the other. [*Plastray Corp v Cole*, 324 Mich 433, 400; 37
NW2d 162 (1949).]

Defendant argues that the obligation in the tuition
contract is a fee and a bond. We find it unnecessary
to decide these questions. Regardless of whether it is
a fee or a bond, the obligation was "other remunera-
tion or consideration," and it was required of defen-
dant as a condition of his employment.

The statutory doctrine of ejusdem generis supports
this conclusion.

"[Ejusdem generis] is a rule whereby in a statute in which
general words follow a designation of particular subjects,
the meaning of the general words will ordinarily be pre-
sumed to be and construed as restricted by the particular
designation and as including only things of the same kind,
class, character or nature as those specifically enumerated."
[*People v Brown*, 406 Mich 215, 221; 277 NW2d 155 (1979).]

Plaintiff conditioned defendant's employment on
his agreement to pay $50 a week for the first three
years, minus $50 a week for each week worked in the
next three years. Thus, plaintiff required that defen-
dant grant it a contractual right to financial recovery
in the event he did not complete six years of employ-
ment. This repayment arrangement represents remu-
neration or consideration that ran from defendant to
plaintiff.

We reject the Court of Appeals equation of the
training repayment arrangement in the contract to an

employer's right to be reimbursed for personal phone calls or employer-provided tools kept after employment. A policy requiring an employee to reimburse his employer for personal phone calls or to pay for tools after he leaves is not a condition of employment. Employees are not required to make personal phone calls, and they need not take tools with them after leaving employment. Hence, such policies are not conditions for obtaining employment, but rather workplace rules similar to docking pay for tardiness or excessive sick days.

We note, also, that some employers offer to fund employees' educations with the understanding that the employees will repay, unless they remain with the employer for a specific period. Such programs do not violate subsection 8(1) of the WFBA. As with reimbursement for personal phone calls and paying for employer-provided tools removed after a job ends, they are optional and not a condition of employment or continued employment.

In contrast, the tuition contract was a condition of employment. Defendant could not work for plaintiff without submitting to its repayment provisions.[8]

---

[8] The dissent essentially finds a distinction between unilateral and bilateral agreements dispositive. It argues that the tuition contract is a bilateral offering because the employee gets something back for his repayment, rather than receiving nothing. According to the dissent, bilateral agreements fall outside the statutory protections of subsection 8(1). The problem with this approach is that it would make an absurdity of the statute. The slightest return from the employer (perhaps even the legendary peppercorn) would take the employee out of the protection of the act. Certainly such a minimal benefit running to the employee could be found in all employment arrangements; therefore, this approach would make the statute ineffectual in accomplishing the employee protection intended. Accordingly, we are constrained to reject the unilateral-bilateral distinction and utilize the broader "any consideration" standard discussed above, because it will not thwart the statute's operation.

IV. CONCLUSION

Plaintiff required defendant to sign its tuition contract as a condition of employment. The contract required defendant to provide, as remuneration or consideration, monetary payments to plaintiff in the event he did not complete six years of employment. Both the statute, MCL 408.478(1); MSA 17.277(8)(1), and the administrative rule, 1982 AACS, R 408.9011, bar employment contracts that require remuneration or consideration from an employee. We find that the tuition contract was void and unenforceable under both. Therefore, we reverse the decision of the Court of Appeals and reinstate the judgments of the district and circuit courts.

WEAVER, C.J., and CAVANAGH, TAYLOR, and MARKMAN, JJ., concurred with KELLY, J.

YOUNG, J. I respectfully dissent from what I believe to be the majority's unpersuasive effort to fit the parties' tuition contract into the prohibition contained in MCL 408.478(1); MSA 17.277(8)(1).[1] Because the terms of the tuition contract clearly do not resemble a "fee, gift, tip, gratuity, or other remuneration or consideration," I would hold that the contract does not violate subsection 8(1) and would affirm the Court of Appeals decision on this basis.

---

[1] Subsection 8(1) provides:

An employer, agent or representative of an employer, or other person having authority from the employer to hire, employ, or direct the services of other persons in the employment of the employer shall not demand or receive, directly or indirectly from an employee, a fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment.

What I find most troubling about the majority's analysis is its use of the statutory construction principle of *ejusdem generis*. I think that the majority's approach represents the exact opposite of that principle.[2] As a condition of employment, plaintiff required defendant to agree either to work for six years or to pay for some part of the cost of the training that was provided to him. The majority's conclusion, that this independent agreement is a "consideration" in the nature of a fee, gift, tip, or gratuity, does not square with a natural reading of these more specific, but ordinary, statutory terms.

Fees, gifts, tips, and gratuities all connote something given to an employer for which the employee, other than the job itself, gets nothing in return. Thus, I agree with the majority that the statute is designed to "prevent kickbacks or payments of any kind to an employer in return for employment or its continuation." *Ante* at 241. Stated otherwise, the statute plainly seeks to prevent employers from selling jobs by extracting things of value from an employee as a condition of employment or continued employment. The parties' tuition contract is far different and is not in any ordinary sense a gift. In return for his agreement to the terms of the tuition contract, defendant, a nineteen-year-old high school graduate, received something very valuable separate and apart from a job: extensive training in appliance repair that ena-

---

[2] The majority observes that "consideration" has a "unique meaning under the law" (although it never explains why that fact is relevant to the construction of this statute). *Ante* at 241. As further explained below, a proper application of ejusdem generis to the language of subsection 8(1) instructs that "consideration" be construed to include only those things of the same kind, class, character, or nature as fees, gifts, tips, and gratuities.

bled him to advance from making $7 an hour as an apprentice to some $50,000 a year as an appliance repair journeyman two and a half years later.[3] Thus, in my view, whether plaintiff also received a benefit—defendant's commitment either to work for six years or pay for his training—is irrelevant because this commitment was not in the nature of a fee, gift, tip, or gratuity.

The majority rejects this logic on the ground that it would make "an absurdity of the statute," make the statute "ineffectual in accomplishing the employee protection intended," and otherwise "thwart the statute's operation." *Ante* at 243, 244, n 8. However, we rejected such methods of statutory construction in *People v McIntire*, 461 Mich 147, 156, n 8; 599 NW2d 102 (1999). Once the majority's reliance on what I believe is an unexpressed legislative intent is cast aside, it becomes obvious that the parties' agreement does not even remotely resemble a fee, gift, tip, or gratuity given in exchange for the privilege of employment. Rather, it is an agreement designed merely to

---

[3] In fact, defendant's training enabled him to obtain Environmental Protection Agency certification to work with refrigerants. The majority suggests that, under my construction, "[t]he slightest return from the employer (perhaps even the legendary peppercorn) would take the employee out of the protection of the act" because "such a minimal benefit running to the employee could be found in all employment arrangements." *Ante* at 243, 244, n 8. I agree with the majority that, if the training provided to an employee has no value, then it might indeed constitute a "fee, gift, tip, gratuity, or other remuneration or consideration." Such agreements may very well violate subsection 8(1). However, we are not concerned here with an agreement in which the benefit to the employee is de minimis or otherwise lacking value. The fact remains that *this* defendant received training in appliance repair that enabled him to *triple his income in less than three years*. The majority relies on hypothetical scenarios not before the Court to support its conclusion. I confine my analysis to the facts of *this* case and conclude that defendant here received a real benefit as amply demonstrated by his $50,000 salary.

ensure that an employer's costs will be at least partially offset in the event that an employee who has been heavily subsidized in his training leaves such employment before those subsidies can be fully amortized.

In sum, because I read the statute to preclude only gift-like boons to an employer and not agreements of the kind at issue here, I dissent.

CORRIGAN, J., concurred with YOUNG, J.