**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0983n.06

No. 11-2132

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Sep 06, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LOMREE, INC., | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| PAN GAS STORAGE, LLC, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**Before:  MOORE, WHITE, and LUCERO,**[*] **Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  For over fifty years, Pan Gas Storage, LLC

("Pan Gas") provided natural gas free of charge to two parcels of land owned by Lomree, Inc.

("Lomree").  In 2010, questioning its own practices, Pan Gas sent a letter to Lomree indicating its

intent to cease providing the gas.  Lomree sued for breach of contract seeking equitable and

compensatory relief, citing several contracts from 1946 and 1957 between Lomree's and Pan Gas's

predecessors.  Pan Gas moved for summary judgment on the basis that the contracts unambiguously

did not provide for free gas.  The district court held that the contracts were ambiguous and that Pan

Gas's course of performance and the doctrine of construing contracts against the drafter warranted

granting summary judgment in favor of Lomree instead.  We agree that the contracts are ambiguous,

but because the ambiguities raise numerous questions of fact, summary judgment was

---

[*]The Honorable Carlos F. Lucero, Circuit Judge for the United States Court of Appeals for
the Tenth Circuit, sitting by designation.

inappropriately granted in favor of Lomree. We therefore **REVERSE** the district court's judgment and **REMAND** for further proceedings.

## I. BACKGROUND

The dispute in this case centers around a series of contracts entered into more than half a century ago. In 1946, the Kuhn family and the Minor family each entered into contracts with the Panhandle Eastern Pipeline Company ("Panhandle Eastern") granting Panhandle Eastern the right to mine the natural gas underneath the families' land. The contracts provided the Kuhns and the Minors with royalty payments for the gas mined as well as the right "to have gas free of charge from any gas well on the leased premises [for use on the premises] by making his own connections with the well at his own risk and expense." R. 22-2, Ex. 1 (1946 Contract at ¶3) (Page ID #211).[1] Everyone agrees that this permitted the parcels to use gas at no expense from 1946 until at least 1957 when the new contracts were executed.

In 1957, the parties executed a "Gas Storage Agreement and Oil and Gas Lease." The parties dispute whether the gas field had become depleted by 1957 or was close to depletion, and they dispute whether Panhandle Eastern had already begun using the field as a storage area at the time the new agreements were signed. *See* R. 28 (D. Ct. Op. & Order at 3) (Page ID #402). The new lease permitted Panhandle Eastern to use the families' land to inject and store gas mined from other fields, and provided that Panhandle Eastern would pay an annual storage rental fee "so long as gas is

---

[1]We rely on the defendant's transcription of the terms of the contracts because the text of the contracts is difficult to discern in the photocopied versions of the originals provided by the parties. The plaintiff has not offered a contrary transcription.

produced or stored or such gas storage rights are utilized or held by Lessee." R. 22-2, Ex. 1 (1957

Lease at ¶4, ¶5) (Page ID #214-15). The key provision of the new contracts under dispute is in

paragraph 15:

> This lease supersedes and cancels that certain oil and gas lease [the 1946 contract];
> provided, however, that if any well or wells has or have been drilled under the terms
> of said lease, such well or wells and any personal property used or obtained in
> connection therewith shall be included in the terms and provisions of this lease.

*Id.* at ¶ 15 (Page ID #216). The parties dispute whether paragraph 15 incorporates by reference the

continued use of stored gas free of charge from the existing wells on the families' property. In 1958,

the parties also entered into a "Natural Gas Conveyance" contract that conveyed all of the remaining

natural gas under the properties to Panhandle Eastern. *Id.* (Natural Gas Conveyance) (Page ID

#214).[2]

Since then, the Kuhns and the Minors sold their land to Lomree, which has continued to use

gas on the property free of charge from Pan Gas, the successor in interest to Panhandle Eastern and

current operator of the storage field. Pan Gas claims that in 2010 it "discovered" Lomree's right to

free gas had been canceled by the contracts in 1957 and Panhandle Eastern's field personnel had

simply failed to discontinue the supply. Appellant Br. at 6. Pan Gas advised Lomree by letter that

it would discontinue the supply in November 2010, and Lomree responded by filing suit in state

court. Lomree seeks compensatory damages, a declaration of rights, and temporary and permanent

---

[2]In 1956, the parties had signed an option contract to permit Panhandle Eastern to purchase
the right to all natural gas then-remaining under the properties and future storage rights, the exercise
of which led to the contracts in 1957 and 1958. R. 22-2, Ex. 1 (Options Contract) (Page ID #212-
14).

injunctive relief, all stemming from a state-law breach-of-contract claim. R. 1 (Compl. at 7) (Page ID #13). Pan Gas removed the case to the U.S. District Court for the Eastern District of Michigan based on diversity of citizenship.

In May 2011, Pan Gas moved for summary judgment on the basis that the contracts unambiguously terminated Lomree's right to free gas. Lomree responded, agreeing that the contracts were unambiguous, but arguing that they unequivocally did not terminate Lomree's right to free gas. Lomree therefore asked the court to award it summary judgment under Federal Rule of Civil Procedure 56(f)(1), or at a minimum, to let a jury decide the question. R. 26 (Pl.'s Opp. to Summ. J. at 7) (Page ID #367). Pan Gas responded by maintaining its position that Lomree's interpretation of the contracts was unreasonable. At oral argument in the district court, Lomree's counsel stated that he was going to "break with Team Lomree"—and his own brief—and conceded that "I don't think that you can reasonably make the argument that this is unambiguous. I think that there's room for two reasonable interpretations." R. 36 (Hr'g Tr. at 8-9) (Page ID #489-90). Lomree's counsel concluded by emphasizing the alternative argument from the brief that "this is a classic case for the jury." *Id.* at 490.

The district court held that the contracts were ambiguous under Michigan law because the parties had both proffered reasonable interpretations of the key provisions. Because of the ambiguity, the district court considered the parties' course of performance and applied the doctrine of construing ambiguous provisions against the drafter to hold that the contracts "preserve[d] Lomree's right to free gas." R. 28 (D. Ct. Op. & Order at 5) (Page ID #404). Pan Gas appeals the denial of its motion for summary judgment and the grant of summary judgment in favor of Lomree.

## II. JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(a)(1). The parties are diverse: Lomree is a Michigan corporation with its principal place of business in Livingston County, Michigan, and Pan Gas is a limited liability company organized under the laws of Delaware with its principal place of business in Houston, Texas. R. 1 (Notice of Removal at ¶¶5-6) (Page ID #2). Lomree originally contested Pan Gas's notice of removal on the grounds that the amount in controversy was less than $75,000. The district court held, and we agree, that even though the complaint identified the amount of compensatory damages as $25,000, Pan Gas demonstrated competent proof that the costs of complying with the injunctive relief—free gas for so long as the land is used as a storage field—would quickly surpass $75,000 from either party's view point. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006); R. 19 (D. Ct. Order at 4-6) (Page ID #165-67). We have jurisdiction to review the district court's final order granting summary judgment under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

Summary judgment is generally appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Lomree did not formally move for summary judgment; rather, Lomree asked the court in opposing Pan Gas's motion to instead grant summary judgment to Lomree under Federal Rule of Civil Procedure 56(f),

5

the Rule that embodies the principle in *Celotex*. The grant of summary judgment to a non-moving party is subject to two different standards of review. We review for abuse of discretion the initial procedural decision to enter summary judgment for a non-moving party. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). We review de novo the substance of the district court's decision to grant summary judgment. *Id.*; *see also Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

This case is also unusual in that summary judgment was granted for the plaintiff on an issue for which the plaintiff had the burden of proof at trial. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). When the party with the ultimate burden of persuasion on an issue moves for summary judgment, "that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997). Here, we ask whether Lomree presented credible, uncontroverted evidence that would be sufficient to establish by a preponderance of the evidence that the parties intended the contractual right to free gas to continue past 1957. We view this evidence and resolve all inferences in the light most favorable to the losing party, Pan Gas. *See Anderson*, 477 U.S. at 255.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Under Michigan law, absent an express choice-of-law provision in a contract and certain exceptions not applicable here,

the law of the forum state governs the interpretation of the contracts. *Id.* We therefore agree with the parties and the district court that Michigan law applies in this case.

The question of whether a contract or its terms is ambiguous is a question of law in Michigan. *Id.* (citing *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996)). The proper meaning of clear and unambiguous terms is also a question of law. *Id.* We therefore review de novo the issue of ambiguity and the meaning of the unambiguous terms. *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 451 (Mich. 2003). The proper interpretation of ambiguous contractual provisions, however, is a question of fact. *NILAC Int'l*, 362 F.3d at 358 (citing *Port Huron*, 550 N.W.2d at 237). "If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate." *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997).

Pan Gas points us to language in the Michigan cases to argue that all ambiguous contracts must automatically be interpreted by juries. *See, e.g.*, *Zinchook v. Turkewycz*, 340 N.W.2d 844, 848 (Mich. Ct. App. 1983) ("[W]here the language used is ambiguous or incomplete . . . the substance of the parties' agreement is a question of fact *for the jury*." (emphasis added)). Lomree responds by attempting to suggest that this case is about equitable relief and may therefore be decided by a judge. Both arguments are misplaced. As with any case involving questions of fact, the existence of contractual ambiguities does not automatically preclude summary judgment if the evidence of intent is undisputed. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir.) ("We reverse a district court's award of summary judgment when the contract at issue is

ambiguous *and* the appealing party has raised a genuine issue of material fact." (emphasis added)), *cert. denied*, 555 U.S. 887 (2008).[3]  Summary judgment interpreting an ambiguous contract would be appropriate if the relevant extrinsic evidence is uncontested and sufficient on its own to establish intent, or if the extrinsic evidence is so one-sided as to make one party's interpretation unreasonable. *Id.* (citing *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 49 (1st Cir. 2004)).  Whether Lomree's claim is one for legal or equitable relief is irrelevant if there are no genuine issues of material fact, because "it is well settled that summary judgment does not violate the Seventh Amendment." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 n.3 (6th Cir. 2009) (internal quotation marks omitted).

## IV.  BREACH OF CONTRACT CLAIM

Pan Gas claims that the district court erred by failing to hold that the contracts unambiguously do not grant Lomree a right to free gas.  At a minimum, Pan Gas argues that the district court erred in granting summary judgment to Lomree upon finding that the contracts were ambiguous.  Because the contract is ambiguous, and the extrinsic evidence of intent—although favoring Lomree—is not enough to support a judgment as a matter of law for the plaintiff, Lomree was not entitled to summary judgment in this case.

---

[3]Even if we were to read the Michigan cases as creating a per se rule, and it is not clear they do, we would apply the federal standard for summary judgment, *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009), and the federal standard for when a judge or a jury must resolve a claim, *see Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958) (holding diversity plaintiff had right to jury even though state would have permitted judge to decide her claim).

## A. The Contracts Are Ambiguous

Under Michigan law, we must "'give contractual language that is clear and unambiguous full effect according to its plain meaning unless it violates the law or is in contravention of public policy.'" *Stryker Corp. v. Nat'l Union Fire Ins. Co.*, 681 F.3d 819, 823 (6th Cir. 2012); *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) ("A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written.") (emphasis omitted). A contract provision is ambiguous if its language may reasonably be interpreted in two or more ways or its "provisions cannot be reconciled with each other." *Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010).[4] "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Id.*

We agree with the district court that the parties have each offered a reasonable interpretation of the 1957 Lease. One interpretation, offered by Pan Gas, is that the 1957 Lease terminated the free-gas clause from the 1946 Contract by terminating and superseding the 1946 Contract entirely

---

[4]The Michigan courts are conflicted regarding whether a contract is instead ambiguous only if it is *equally* susceptible to two reasonable interpretations. *See Mayor of Lansing v. Mich. Pub. Serv. Comm'n*, 680 N.W.2d 840, 847 (Mich. 2004) (requiring statute be "equally susceptible" to two interpretations to be ambiguous); *but see Petersen v. Magna Corp.*, 773 N.W.2d 564, 569 (Mich. 2009) (Kelly, C.J.) (noting *Lansing*'s "equally susceptible" requirement was not binding and "is unsupported by any Michigan law"). The Michigan Court of Appeals has not consistently applied the "equally susceptible" principle to contractual ambiguities. *Compare Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010) (contract ambiguous because two reasonable interpretations) *with Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 (Mich. Ct. App. 2005) (contract not ambiguous because not equally susceptible to competing interpretations). Because neither party here argues that the "equally susceptible" standard should apply, we adopt the position expressed by the Michigan Court of Appeals in *Woodington* for the purposes of this case.

and creating no express provision for the continuation of the right to take free gas. Lomree, on the other hand, argues that the 1957 Lease incorporates by reference the free-gas right from the initial contract in paragraph 15 by providing that "personal property used or obtained in connection" with the wells installed under the 1946 Contract "shall be included in" the terms of the new contract. Because gas becomes personal property once extracted from the ground under Michigan law, *Eadus v. Hunter*, 256 N.W. 323, 325 (Mich. 1934), any stored gas "used or obtained in connection" with the wells installed pursuant to the prior lease—i.e., the free gas used by the properties—would also be included in the terms of the new lease, R. 28 (D. Ct. Op. & Order at 11-12) (Page ID #410-11).

Pan Gas argues that Lomree's interpretation is unreasonable for several reasons: (1) providing stored gas in paragraph 15 would contradict the language in paragraphs 4 and 5 that the annual rental fee would constitute "payment in full" for the storage rights; (2) providing stored gas would conflict with the language in the Natural Gas Conveyance explicitly excluding royalty payments and releasing all interest in natural gas; (3) the initial free-gas right is not personal property and therefore cannot be incorporated into the 1957 Lease. None of these arguments renders Lomree's position unreasonable.

As the district court correctly observed, the "full payment" language in paragraph 4 cannot be exclusive because paragraph 5 itself supplements the possible payment received. R. 28 (D. Ct. Op. & Order at 15) (Page ID #414). Pan Gas's reading renders paragraph 5 surplusage, which we will not do. *Klapp*, 663 N.W.2d at 453 ("[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.").

10

Nor does Lomree's interpretation contradict the Natural Gas Conveyance, which eliminated the families' right to any royalty payments. As the district court noted, the usage of stored gas would not be a "royalty interest" under Michigan law. R. 28 (D. Ct. Op. & Order at 16) (Page ID #415) (citing *People v. Blankenship*, 8 N.W.2d 919, 921 (Mich. 1943)). On appeal, Pan Gas merely repeats its argument that the Natural Gas Conveyance extinguished the right to royalties and makes no effort to explain why using stored gas would be considered a royalty interest under Michigan law. Pan Gas's argument that the Natural Gas Conveyance, which exercised the option to purchase all of the natural gas "then-remaining" below the families' land, somehow independently released the families' contractual interest in using free gas on the property is unsupported by the plain terms of that agreement.

As for whether the stored gas is personal property, Pan Gas advances several reasons why the stored gas should not be considered as personal property under paragraph 15. Pan Gas admits that Michigan law views stored gas as personal property. Appellant Br. at 24. Pan Gas argues, however, that the doctrine of *ejusdem generis* precludes defining personal property in this contract as including stored gas. *Id.* at 18.[5] The doctrine instructs that when "general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *Sands Appliance Servs., Inc. v. Wilson*, 615 N.W.2d 241, 247 (Mich. Ct. App. 2000) (internal quotation marks omitted). Pan Gas

---

[5]Lomree argues that we should not consider this argument because it was raised for the first time on appeal. Because we are unpersuaded by it, we need not decide whether it was forfeited.

offers its own list of specific terms that it deems comparable to "wells," but the contract itself lists no specific examples. The plain meaning of the words "wells and *any* personal property," R. 22-2, Ex. 1 (1957 Contract ¶15) (Page ID #216) (emphasis added), places no categorical limitation on the personal property included. Pan Gas claims that this clause was likely included solely to ensure that the wells and equipment that Pan Gas installed on Lomree's land would not become Lomree's property upon termination of the initial contract, but Pan Gas points to nothing in the plain meaning of the words that mandates this narrow interpretation.

Pan Gas also argues that the initial free-gas clause was a covenant running with the land, preserving either access to existing gas as a royalty interest or a reservation of a mineral interest, and was therefore an interest in real property expiring once the existing gas ran dry. Unlike other jurisdictions, however, Michigan has not held that free-gas clauses constitute covenants running with the land. We agree with the district court that "[t]he fact that courts outside of Michigan have treated free gas clauses as covenants running with the land and therefore interests in real property does not make the contracts any more clear." R. 28 (D. Ct. Op. & Order at 13) (Page ID #412) (footnote omitted). Absent some indication that the parties intended to contract under the laws of Kentucky or Texas, we see no reason to apply their laws to ascertaining the plain meaning of this Michigan contract. And given that the 1946 contract did not identify the free gas as a royalty payment or as a reservation of a mineral interest, these arguments do not render unreasonable Lomree's interpretation of the contract terms. We agree with the district court that the relevant provisions in the contracts at issue are ambiguous.

**B. The Evidence of Intent is Disputed**

Having determined that the district court did not err in deeming the contracts ambiguous, we must next turn to whether it was error to resolve the ambiguity in favor of Lomree on summary judgment. As a procedural matter, we need not decide whether the district court abused its discretion in granting summary judgment sua sponte, because on de novo review of the merits, we hold that summary judgment was inappropriate in this case. The disputed material fact is whether the parties intended the contracts to provide for free gas beyond 1957. Under Michigan law, the party asserting either the existence of rights under a contract or the purported breach of a contract, here Lomree, bears the burden of proof at trial. *Associated Indem. Corp. v. Dow Chem. Co.*, 935 F.2d 800, 804 (6th Cir. 1991). Because Lomree would have the burden of proof at trial to establish that the parties intended the interpretation offered by Lomree, Lomree needed to have put forth credible, uncontroverted evidence that would establish by a preponderance of the evidence that Lomree's interpretation of the contract was the one intended by the parties. This is a high hurdle, and we cannot say as a matter of law that Lomree has met that burden at this stage.

When the intent of the parties cannot be ascertained from the language of the contract itself, "the next best way to determine the parties' intent is to use relevant extrinsic evidence." *Klapp*, 663 N.W.2d at 457 (emphasis omitted). In Michigan, relevant extrinsic evidence that may bear on the parties' intent includes the "parties' conduct, the statements of its representatives, and past practice." *Klapp*, 663 N.W.2d at 454. Certainly, Lomree presented some extrinsic evidence in support of its interpretation of the contract. The evidence is uncontroverted that for over fifty years, Pan Gas and its predecessor permitted the properties in question to use gas free of charge. "[O]ne of the best

13

indications of [the parties'] intent" is "[t]he practical interpretation given to contracts by the parties to them, while engaged in their performance and before any controversy has arisen concerning them." *Id.* at 459 (internal quotation marks omitted). But this alone is not enough to entitle Lomree to a judgment as a matter of law at trial. A reasonable fact finder could decide to place little weight on Pan Gas's past performance if it found Pan Gas's interpretation of paragraph 15 to be the more reasonable one.[6] Because Lomree's uncontroverted evidence is insufficient on its own to entitle it to a judgment as a matter of law at trial, we hold that summary judgment was inappropriate in this case.

If at trial the evidence remains insufficient to ascertain the parties' intent, the fact finder could then correctly apply the doctrine of contra proferentem in such circumstances.[7] The doctrine requires construing a contract against the drafter, here Pan Gas's predecessor, when the parties' intent is still unclear after reviewing all the evidence. *NILAC Int'l*, 362 F.3d at 359 (citing *Klapp*, 663 N.W.2d at 455). But because it is too early to say what weight a reasonable fact finder might place on the extrinsic evidence offered by Lomree, summary judgment in favor of Lomree was inappropriate in this case.

---

[6]Pan Gas also claims that other potential extrinsic evidence could be dispositive, such as when the gas fields were first used as storage fields. *See* Appellant Br. at 37. We find it difficult to credit such statements, however, because Pan Gas made no effort to identify any evidence that would support its position on that question, either on appeal or below.

[7]We take no position on the issue of who should be the fact finder in this case, a judge or a jury.

## V. CONCLUSION

For the aforementioned reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings.