BOYCE F. MARTIN, Jr., Circuit Judge.
This appeal involves Progressive Casualty Insurance Company’s refusal to pay its insured, Seaway Community Bank, based on an exclusion in the bankers’ bond agreement into which they entered. Under Michigan law, which applies in this diversity action, courts must construe ambiguous exclusionary clauses strictly in favor of the insured. Exclusion (o) of the bankers’ bond stated that Progressive did not have to compensate Seaway for a loss resulting from checks that were not “finally paid,” but Exclusion (o) did not specify that checks drawn upon Canadian banks were excluded. Applying Michigan’s version of the Uniform Commercial Code, the checks were finally paid because the midnight-deadline rule applied. We therefore AFFIRM the district court’s judgment in favor of Seaway.
Seaway, a Michigan-based bank, bought a Financial Institutions Bond (also called a blanket bond) from Progressive, an Ohio-based insurer. The Bond was a form contract: it stated at the top that it was “Standard Form No. 24.” The American Bankers Association and the American Surety Association jointly drafted Standard Form No. 24. See Oritani Sav. and Loan Ass’n v. Fidelity and Deposit Co. of *649 Maryland, 989 F.2d 635, 643 (3d Cir.1993). Neither Seaway nor Progressive modified the boilerplate language in the Bond.
The Bond provided coverage for losses caused by forged checks. Insuring Agreement (D) of the Bond, “Forgery or Alteration,” provided coverage for: “Loss resulting directly from the Insured [Seaway] having, in good faith, paid or transferred any Property in reliance on any Written, Original (1) Negotiable Instrument ... which ... is altered, but only to the extent the alteration causes the loss.”
The Bond excluded coverage for checks that were not “finally paid.” Exclusion (o) provided that the Bond excluded coverage for “loss resulting directly or indirectly from payments made or withdrawals from a depositor’s account involving items of deposit which are not finally paid for any reason, including but not limited to Forgery or any other fraud ...” (emphasis added).
A Seaway customer deposited three checks, made payable to him through a Canadian bank, into his Seaway account: $66,672.13, deposited on October 26, 2009; $88,474.83, deposited on November 11, 2009; and $228,945.05, deposited on December 3, 2009. Seaway allowed the customer to withdraw the proceeds from the three checks from his account.
Unbeknownst to Seaway, however, the checks had been fraudulently altered. Before the Seaway customer received them, someone had deleted the original payee and inserted the Seaway customer’s name as the payee. The Canadian bank, the payor of the checks, returned the three checks to Seaway on December 13, 2009; December 18, 2009; and January 18, 2010 and the provisional credits were reversed. Seaway alleged it lost (after the right of offset) $375,412.19.
Seaway notified Progressive of the loss, and, in February 2010, submitted a proof of claim to Progressive. But Progressive denied the claim on the basis of the Bond’s Exclusion (o), claiming that the checks were not “finally paid,” because checks from Canadian banks are provisional and subject to reversal — i.e., not “finally paid.” For this reason, Progressive claimed, Exclusion (o) applied.
Seaway sued Progressive for coverage. The district court had jurisdiction over this case based on diversity of the parties. 28 U.S.C. § 1332(a). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). After a hearing, the district court entered an order, without a written opinion, granting Seaway’s motion for judgment on the pleadings and denying Progressive’s motion for judgment on the pleadings. Progressive timely appealed.
We review motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same de novo standard as we review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir.2008) (citing Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir.2005)).
A federal court sitting in diversity must apply the choice of law provisions of the forum state. Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 425 (6th Cir.2009) (citing NILAC Int’l Mktg. Group v. Ameritech Servs., Inc., 362 F.3d 354, 358 (6th Cir.2004)). Given that Seaway filed this case in Michigan state court, and that it was removed to the Eastern District of Michigan, Michigan choice of law provisions apply. Id. Specifically, we apply Article 4 of the Michigan Uniform Commercial Code, Mich. Comp. Laws Ann. § 440.4101 et seq. It provides that the *650 ‘“liability of a bank for actions or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located.’ ” Colorado Nat’l Bank v. First Nat’l Bank & Trust Co., 459 F.Supp. 1366, 1368 n. 4 (W.D.Mich.1978) (quoting Mich. Comp. Laws Ann. § 440.4102(2)).
We begin by outlining the check-collection procedure that banks use. We then apply it to this case’s facts. Article 4 of the Michigan Uniform Commercial Code describes the check-collection procedure used by banks which are members of or participants in the Federal Reserve System. Id. The check-collection process begins when a customer deposits a check for collection in a “depository” bank, defined as “ ‘the first bank to which an item is transferred for collection even though it is also the payor bank.’” Id. at 1368 n. 5 (quoting Mich. Comp. Laws Ann. § 440.4105(a)). Here, Seaway was the depository bank. Seaway paid its customer, and then it sought payment on each check he had deposited by transferring each of them through one or more “intermediary” banks, defined as “ ‘any bank to which an item is transferred in the course of collection except the depository or payor bank.’ ” Id. at 1368 n. 6 (quoting Mich. Comp. Laws Ann. § 440.4105(c)). Each bank in the collection process “settles” for a check by various means, including by paying cash. Id. at 1368. Giving credit to the prior intermediary bank is the most common method of settlement. Id. (citing Mich. Comp. Laws Ann. § 440.4101, Official Comment 5). In other words, each intermediary bank that transfers the check to the next intermediary bank receives a provisional credit from the transferee, with the penultimate intermediary bank in the collection chain receiving its provisional credit from the bank upon which it was drawn, called the “payor” bank, which means “ ‘a bank by which an item is payable as drawn or accepted.’ ” Id. at 1369 n. 8 (quoting Mich. Comp. Laws Ann. § 440.4105(b)). Here, the payor bank for each of the checks was a Canadian bank.
To revoke a settlement, the payor bank must return the item before its midnight deadline, defined as “midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later.” Mich. Comp. Laws Ann. § 440.4104(j). If the payor bank decides not to finally pay the check — perhaps -because it is fraudulent — then these provisional credits are reversed. Whether the payor bank decides to finally pay the check or dishonor it, under Article 4 of the Uniform Commercial Code, the payor bank must take action before midnight on the next banking day following the banking day on which the payor bank receives the check. This is known as the “midnight deadline” rule. See Mich. Comp. Laws Ann. § 440.4302(1). Under the midnight deadline rule, if the payor bank receives a check and does nothing by midnight on the following banking day, then the bank must pay the check.
Here, the checks from the Canadian payor bank were “finally paid” as that phrase is defined in the Uniform Commercial Code. Progressive states that the Uniform Commercial Code, and the midnight deadline rule, do not apply to Canadian banks. Therefore, the Canadian payor bank in this case could — and did — decide days after receiving the checks from the collecting bank that it was going to dishon- or the checks because they were fraudulent. The Canadian bank reversed the provisional credits all the way down the chain to Seaway. Because the fraudulent checks at issue in this case could never be “finally paid,” Progressive argues, they fall *651 under Exclusion (o), which provided that Progressive did not have to pay Seaway for losses incurred on checks not “finally paid.” The phrase “finally paid” has a clear meaning within the banking industry: it means when the midnight-deadline rule applies under the Uniform Commercial Code.
Under Michigan law, an insured loses coverage under a policy if one of the policy’s exclusions applies to the insured’s particular claims. Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 489 N.W.2d 431, 434 (1992) (citing Fresard v. Michigan Millers Mut. Ins. Co., 414 Mich. 686, 327 N.W.2d 286, 289 (1982)). Nevertheless, “[exclusionary clauses in insurance policies are strictly construed in favor of the insured.” Id. (citing Shelby Mut. Ins. Co. v. United States Fire Ins. Co., 12 Mich.App. 145, 162 N.W.2d 676, 678 (1968)). We must give effect only to “[c]lear and specific exclusions.” Id. We may not hold an insurance company liable for a risk that it did not assume. Id. (citing Kaczmarck v. La Perriere, 337 Mich. 500, 60 N.W.2d 327, 330 (1953)). But it is possible to hold an insurance company liable for a risk that it did assume, especially given that we must strictly construe an exclusionary clause in the insured’s favor. We must construe an ambiguity in an insurance contract against the insurer and in favor of coverage. Wielinga v. Am. Way Life Ins. Co., 189 Mich.App. 359, 473 N.W.2d 730, 731 (1991) (citing Auto Club Ins. Ass’n v. DeLaGarza, 433 Mich. 208, 444 N.W.2d 803, 806 (1989)).
We must construe Exclusion (o) strictly — in Seaway’s favor and in favor of coverage. The Exclusion does not say whether or not checks drawn on Canadian banks are to be exempted from Michigan’s version of the Uniform Commercial Code’s definition of “not finally paid.” Applying the Uniform Commercial Code, the checks were finally paid. Therefore, Exclusion (o) could not apply, and Progressive must indemnify Seaway. We AFFIRM the district court’s judgment.