**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

TOWNSHIP OF LEONI,

        Plaintiff/Counter-Defendant-
        Appellant,

v

TOWNSHIP OF COLUMBIA, TOWNSHIP OF
HANOVER, and TOWNSHIP OF LIBERTY,

        Defendants/Counter-Plaintiffs-
        Appellees.

UNPUBLISHED
July 20, 2017

No. 331301
Jackson Circuit Court
LC No. 12-001040-CK

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this case concerning the obligations of several municipalities to pay for bonds issued to finance the construction of a sewer system, plaintiff appeals as of right from the trial court's decision to dismiss its complaint.[1]  We affirm.

The Southern Regional Interceptor sewer system is a health and safety project financed by a public bond issue pursuant to a contract between the parties and Jackson County.  Plaintiff owns and operates a wastewater treatment plant that is part of the project.  Plaintiff pledged its full faith and credit for the payments of "obligations pledged for note and bond payments" under the bond contract, anticipating contributions from defendants, but upon finding that those contributions were falling short of what was required to cover the obligations, and the defendants having failed/refused to provide any additional funds, initiated this lawsuit.

The trial court dismissed plaintiff's complaint on defendants' motion for summary disposition, on the ground that, under the bond contract, as informed by the pertinent statute, only Jackson County had the right to direct defendants to increase their funding.  The trial court also invoked the concept of standing in declaring, "because the County didn't bring this case, [plaintiff] does not have standing under this contract to bring this action."  Plaintiff argues that

---

[1] After the dismissal of plaintiff's complaint, litigation on defendants' counterclaim continued through to the court's entry of a verdict of no cause of action, which was in fact the final order in this case.  Defendants have not appealed the latter decision.

the trial court's conclusions were at variance with the plain meaning of the contract, as well as the applicable statute, and the law regarding standing.

A trial court's decision on a motion for summary disposition is reviewed de novo as a question of law. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). Likewise, reviewed de novo, are issues of standing, *In re KH*, 469 Mich 621, 627-628; 677 NW2d 800 (2004), along with the interpretation of contracts, *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000), and statutes, *Thompson v Thompson*, 261 Mich App 353, 358; 683 NW2d 250 (2004).

"Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court; it is the right to take the initial step that frames legal issues for ultimate adjudication by court or jury." *Black's Law Dictionary* (6th ed). In Michigan, a party has standing if having a legal cause of action, when the party is seeking declaratory relief and satisfies the requirements of the pertinent court rule, or "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). Accordingly, " '[s]tanding does not address the ultimate merits of the substantive claims of the parties.' " *Id.* at 357, quoting with approval *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633; 537 NW2d 436 (1995).

In this case, the trial court was not failing to recognize that plaintiff had a special injury or substantial interest in the matter at hand, but instead held that the contract at issue left plaintiff without a cause of action as it concerned compelling defendants to increase their payments to plaintiff to meet contractual obligations. The primary goal in contract interpretation is to ascertain and effectuate the intent of the parties. *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000). To determine the parties' intent, the contract should be read as a whole to attempt to apply its plain language. *Id.* Where the contractual language is not ambiguous, its meaning is a question of law for the court. See *id.* at 63-64.

The statutory framework behind the project in question is 1957 PA 185, as amended, MCL 123.731 *et seq.* MCL 123.742(1) states that a county "and any 1 or more municipalities . . . may enter into a contract or contracts for the acquisition, improvement, enlargement, or extension of a water supply, a sewage disposal, or a refuse system, . . . and for the payment of the costs by the contracting municipalities." Subsection (2) further provides as follows:

> [E]ach contracting municipality may pledge its full faith and credit for the payment of its obligations under the contract. If the municipality has taxing power, it may each year levy a tax in an amount that will be sufficient for the prompt payment of all or part of the contract obligations due before the following year's tax collection. If the contract or an unlimited tax pledge in support of the contract has been approved by the electors, the tax may be in addition to any tax that the municipality may otherwise be authorized to levy . . . . If a contracting municipality at the time of its annual tax levy has on hand in cash any amount pledged to the payment of the current obligations for which the tax levy is to be made, then the annual tax levy may be reduced by that amount. . . .

Paragraph 15 of the bond contract at issue includes the following:

[Defendants] will establish fees and charges for services to persons using the System, including but not limited to, . . . debt service charges, if any, upon advice from the Board and/or Columbia as to amounts necessary to operate and maintain the System, establish appropriate reserves, and pay debt service on the Notes and the Bonds. In accordance with the Wastewater Service Agreement, [defendants] agree to adopt an ordinance that will require users of the System . . . to pay fees and charges for sewer transportation and treatment service. [Defendants] shall bill, collect and account for all fees and charges established by [defendants] with respect to the System. [Defendants] covenant that should it appear, upon notice from [plaintiff], Columbia or the County, that additional funds will be needed to pay the expenses of operation, maintenance and administration of the System and/or debt service on any notes or bonds when due, [defendants] will promptly increase fees and charges for the use of all System facilities or provide such moneys from general funds, so that sufficient revenues will be available for such purposes. The County shall have the right to examine the books and records of [the parties] relative to the System and, after conferring with [the parties], shall have the authority to direct [defendants] to raise such additional funds, should it appear to the County that additional funds will be needed for such purposes. . . .

Plaintiff emphasizes the provision ascribing to defendants specific duties to raise money to cover their obligations under the contract, including by "promptly" raising rates or further tapping into general funds upon notice of such necessity from plaintiff. Defendants in turn emphasize that the County is given the right to "direct" defendants to take such action. The trial court ably reconciled those two provisions by holding that "while the Bond Contract allows [plaintiff] to give notice of the need for additional funds, it reserves to the County the authority to direct [defendants] to raise such additional funds." Confirming this reading is that the wording, "should it appear, upon notice from [plaintiff], . . . that additional funds will be needed," suggests not that plaintiff may unilaterally determine such a thing, but only that plaintiff may initiate a process of inquiry that must ultimately be determined by Jackson County if the parties cannot agree. In sum, the trial court correctly reasoned that ¶ 15 sets forth contractual rights for plaintiff, but with enforcement options limited to providing notice and seeking cooperation from its contract partners, especially Jackson County.

The trial court further held that ¶ 19 confirmed its reading of ¶ 15 by providing only the County a remedy in the event of a default. Paragraph 19(b) states as follows:

The County hereby retains all other rights and remedies provided by Act 185, or any other law, to enforce all obligations of [the parties] under this Contract including the obligation of [the parties] to make all payments in the manner and at the time required by this Contract and the right to direct [the parties] to make a tax levy or rate increase to reimburse the County for any funds advanced.

Plaintiff argues that ¶ 19(b) only guaranteed the County the same rights that ¶ 10 recognized for plaintiff. Paragraph 10 is not parallel to ¶ 19(b), however. Although ¶ 10 reserves to plaintiff its statutory "means and methods . . . for the purpose of providing funds to meet its obligations,"

-3-

only ¶ 19(b) speaks of any specific "right to direct" the parties to levy a tax or increase rates. And, the statutory "means and methods" cited are those set forth in MCL 123.742(2), which do not include suing a fellow municipality to compel it raise or remit additional funds. As the trial court noted,

> MCL 123.742[(2)] permits a municipality with taxing power to pay for a sewage disposal system by levying a tax in addition to any other tax the municipality is authorized to levy, provided the tax or the contract for the public improvement project has been approved by the electors. Alternatively, Act 185 permits a municipality to raise funds by one or more of the following methods: a) service charges to the users; b) special assessment upon benefited lands; c) connection charges; d) setting aside state collected funds; or e) setting aside other available money. . . . [Parenthetical omitted.]

The court further noted that if plaintiff were "simply awarded a judgment for the amount sought against [defendants], the exclusive funding sources authorized by Act 185 could be circumvented, since the only method available to collect a judgment against a municipality is to have a tax levied under MCL 600.6093,"[2] which would neither require approval of the electors nor come under "the requirements of the Headlee Amendment."[3] The trial court thus correctly

---

[2] MCL 600.6093(1) provides in part as follows:

> Whenever judgment is recovered against any township . . . [t]he supervisor or assessing officer . . . shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township, . . . adding the total amount of the judgment to the other township . . . taxes and assessing it in the same column with the general township . . . tax.

> The supervisor or assessing officer shall set forth in the warrant attached to the tax roll each judgment separately, stating the amount thereof and to whom payable, and it shall be collected and returned in the same manner as other taxes. . . .

[3] The Headlee Amendment to the state constitution, enacted by voter initiative in 1978, places certain limits on the Legislature's authority to impose costs on local units of government. It provides, in pertinent part, as follows:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. [Const 1963, art 9, § 29.]

determined that ¶ 10's incorporation by reference of MCL 123.742(2) not only did not signal plaintiff's authorization to sue its contract-partner municipalities for greater funding, but in fact militated against such a reading.

Plaintiff cites ¶ 26 as showing that the bond contract envisioned full litigation rights for it against its fellow contracting townships, on the ground that it specifies an alternate resolution procedure as the first resort in the event of disputes, then states, "If the dispute cannot be resolved, the parties may use any other appropriate legal remedy." We think it obvious that inclusion of the word "appropriate" indicates that this provision was intended to leave intact the remedies set forth in ¶¶ 10, 15, and 19(b), as informed by MCL 123.742(2), not to add to, or otherwise change, the approved remedies. Accordingly, this provision for continuing resort, if needed, to "any other appropriate legal remedy" does not itself show that the trial court erred in concluding from its survey of the other contract provisions that the contract granted only Jackson County the right to "direct" defendants to increase their funding to support the System.

Plaintiff additionally argues that it should be able to collect damages from defendant as a matter of enforcing the declaratory relief the court provided. Plaintiff offers the following summary in its brief on appeal (citation omitted):

> The trial court did, in fact, make declarations including the declaration that the users of the [Southern Regional Interceptor] in the Townships are the source of the funds to pay the bond debt. The declaration by the trial court that the contract unambiguously obligates the Townships to pay the bond debt was an adjudication and declaration of the rights of the parties under the bond contract; an adjudication and declaration that [plaintiff] had a right to enforce in some manner to be determined after a hearing.

From this, plaintiff argues that it "has a right to the enforcement of the trial court's declaration that the bond contract obligates the Townships to pay the bond debt," adding, "The law is clear that such a declaration is enforceable under MCR 2.605(F)[4] and that enforcement may include a monetary award to be established after reasonable notice and hearing."

But the trial court's declarations also included that plaintiff may have an action to compel Jackson County to exercise its contractual obligations to ensure sufficient funding, suggesting mandamus, thus showing that the trial court recognized that plaintiff had plausibly shown itself aggrieved and in need of enforcement avenues. And, plaintiff cites no authority for the proposition that a township obliged by contract to seek enforcement against other contracting townships through their county may bypass that contractual limitation upon persuading the court that some enforcement action is in order.

---

[4] "Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against a party whose rights have been determined by the declaratory judgment." MCR 2.605(F).

For these reasons, we affirm the trial court's determination that the bond contract, as informed by MCL 123.742(2), reserved to Jackson County the prerogative to initiate litigation to compel defendants to raise fees or rates, or otherwise increase their funding for the subject project.

Affirmed.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello