*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURIE RADCLIFFE,

Plaintiff-Appellant,

v

ALLAN HERDMAN, KAREN HERDMAN, and
JOHN HERDMAN,

Defendants-Appellees.

UNPUBLISHED
January 19, 2023

No. 359868
Livingston Circuit Court
LC No. 21-031041-NI

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Zelda, a "pretty big" 10-month-old Gordon Setter, escaped into plaintiff Laurie Radcliffe's backyard trailing a 15-foot-long leash. The dog ran in circles around Radcliffe and the leash wrapped around Radcliffe's ankle. When one of Zelda's owners yelled for her to return home, the leash "snapped." Zelda's momentum swept Radcliffe off her feet. Radcliffe broke her wrist and injured her knee when she fell.

The circuit court granted summary disposition to Zelda's owners, finding that the facts did not support Radcliffe's common-law negligence claim. Radcliffe moved for reconsideration, contending that MCL 287.262, a dog leash statute, and a similarly worded Livingston County ordinance established the Herdmans' liability. She sought leave to amend her complaint to add these claims, but the circuit court denied the request. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Radcliffe lives next door to defendants Allan and Karen Herdman. The Herdmans usually kept Zelda leashed to a stake in their backyard. On the day of the accident, the Herdmans' adult son, John, disconnected the leash so that he could reinsert the stake because, as he later told Radcliffe, "the dog kept pulling it out." Unstaked, Zelda sprinted toward Radcliffe. Radcliffe described that Zelda began "circling her." "[B]efore I knew it," Radcliffe recounted, the leash had wrapped tightly around her ankle, "lassoing" her. When John yelled her name, Zelda took off in his direction and Radcliffe fell.

Radcliffe filed a two-count complaint, asserting a claim under MCL 287.351, which governs dog bites, and a claim for common-law negligence. The Herdmans moved for summary disposition under MCR 2.116(C)(10), pointing out that Radcliffe had not been bitten and contending that because Zelda had no known dangerous propensities, they had no duty to maintain her under their constant control. In support of their motion, the Herdmans attached Radcliffe's deposition testimony.

In her deposition, Radcliffe testified that Zelda "wasn't a very calm dog." She described her as "very high energy, you know, just, like, crazy. And I don't think it was a good listener. It's not like I could say, 'Zelda down,' and she would get down; nothing, you know." When asked whether the Herdmans "ever discuss[ed] with you that this type of thing had happened with this dog before," she replied:

> I believe they discussed that with my husband. I can't remember that I actually heard that, but I know my husband did. It could be that he told me. When this happened to me Allen [sic] said, "This damn dog has done the same thing to me twice in our driveway" - - knocked him down the same way. And . . . when I heard that it really made me mad because it's like you knew the dog's capable of this.

Radcliffe did not file a response to the Herdmans' summary disposition motion. At the hearing, her counsel stipulated to dismissal of the dog-bite count and apologized for not having briefed the negligence claim, which he attributed to an "oversight." The court denied counsel more time to respond and granted summary disposition to the Herdmans, ruling that Radcliffe had failed to show

> some knowledge or notice that Zelda the dog, was aggressive, had previously caused injury to some person, or otherwise, that it was reasonable to foresee that letting her off her tie out for a second, would result in injury to another. Such knowledge would have imposed a duty on them to control their animal at all times while she was outside. And, failure to exercise that control over her, would constitute a breach of that duty.

The court refused to consider Allan Herdman's admissions to Radcliffe's husband on hearsay grounds.

Radcliffe moved for reconsideration, conceding that she had no evidence that Zelda had any dangerous propensities. However, she argued, Zelda's jaunt into her yard trailing the long leash presented a "reasonably foreseeable . . . danger to others," creating a fact question regarding whether John Herdman had negligently disconnected her from the stake. Radcliffe also invoked MCL 287.262, a dog leash statute, and a Livingston County ordinance. She argued that the Herdmans violated both and requested leave to amend her complaint to add these claims.

The trial court denied Radcliffe's motion for reconsideration, reasoning:

[Radcliffe] sets forth a correct statement of law about foreseeability of the injury, but fails to present anything more than pure speculation that the injury from Zelda's leash was reasonably foreseeable. [Radcliffe] presents no evidence in support of

Zelda's leash being dangerous to others – no evidence of prior incidents, no evidence that the Herdmans had witnessed Zelda wrap her leash around other persons, or the like – and instead provides this Court only with [Radcliffe's] opinion that an untethered leash must be dangerous.

The court also denied the motion to amend, finding it "untimely" because "the case has been closed on summary disposition." Although the court recognized that allowing amendment was the general norm, it reasoned that

permitting [Radcliffe] to amend the Complaint at this late stage by adding entirely new legal theories, after the case is closed, would result in undue prejudice to [the Herdmans], as amendment adding new claims [would] effectively result in restarting the case. The Court finds that permitting [Radcliffe] to amend the Complaint to add new claims after hearing all [of the Herdmans'] evidence and hearing this Court's ruling would unduly prejudice [the Herdmans], as it would give [Radcliffe] the opportunity to tailor her allegations to rebut [the Herdmans'] evidence and this Court's reasoning. Finally, this Court finds that permitting [Radcliffe] to amend the Complaint would be futile, as no amendment to the allegations would change the evidence that [the Herdmans] were unaware of Zelda having a propensity for aggression or injurious behavior that would have created a duty for [the Herdmans] to keep close control of the dog at all times. The evidence does not support a negligence claim, and no amended pleadings could change that.

The court emphasized that it was Radcliffe's failure to show the "element of propensity of the dog and foreseeability of the injury that is the turning point of this case."

Radcliffe now appeals.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review the denial of summary disposition and issues of statutory interpretation de novo, without deference to the trial court. *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016). MCR 2.116(C)(10) provides that summary disposition is appropriate when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." We consider the factual record "in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "When the record leaves open an issue on which reasonable minds could differ, a genuine issue of material fact exists, precluding summary disposition." *Estate of Effie Taylor v Univ Physician Group*, 329 Mich App 268, 276; 941 NW2d 672 (2019). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Because Radcliffe failed to preserve her amendment argument, we review the circuit court's decision to deny it for plain error. *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) (citation omitted).

## B.  THE TRIAL COURT PLAINLY ERRED BY DENYING RADCLIFFE AN OPPORTUNITY TO AMEND HER COMPLAINT

Amendment of Radcliffe's complaint to add claims for statutory and ordinance violations would not have been futile, and would not have prejudiced the Herdmans.  The new theories of liability were grounded in facts and liability theories that had been fully developed during discovery, and the court rules specifically permit amendment after a party has lost a motion for summary disposition.

MCR 2.118(A)(2) states: "[A] party may amend a pleading only by leave of the court or by written consent of the adverse party.  Leave shall be freely given when justice so requires." MCR 2.116(I)(5) further provides that when the court dismisses a party's claims pursuant to MCR 2.116(C)(8), (9) or (10), "the court *shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." (Emphasis added.)  An amendment is not justified when the party seeking it has engaged in undue delay, acted in bad faith or with a dilatory motive, or repeatedly failed to cure pleading deficiencies despite prior opportunities to amend; when allowing an amendment would cause undue prejudice to the nonmoving party; or when such amendment would be futile.  *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 239-240; 615 NW2d 241 (2000).

No evidence supports that Radcliffe's counsel unduly delayed the request to amend, or that it was made in bad faith or to unduly prolong the proceedings.  The circuit court's finding that the Herdmans would be prejudiced by the amendment because "it would give [Radcliffe] the opportunity to tailor her allegations to rebut [the Herdmans'] evidence and this Court's reasoning" reflects a misunderstanding of prejudice in this context.

Prejudice occurs "if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).  Prejudice also may result "when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial." *Id*. at 659-660.  The circuit court characterized prejudice as a strengthening of the moving party's case at the expense of the non-movant.  But if that were correct, no amendment could ever be proper.  The court rule contemplates that a motion to amend may be denied only when the prejudice is *undue*.  Undue prejudice "must stem from the fact that the new allegations are offered late, not that they might cause a party to lose on the merits." *Sands*, 463 Mich at 239 n 6.  There was no "undue" prejudice here.

Nor would the amendment be futile.  The leash law, MCL 287.262 provides:

> *It shall be unlawful* for any person to own any dog 6 months old or over, unless the dog is licensed as hereinafter provided, or to own any dog 6 months old or over that does not at all times wear a collar with a tag approved by the director of agriculture, attached as hereinafter provided, except when engaged in lawful hunting accompanied by its owner or custodian; . . . or for any owner to allow any

dog, except working dogs such as leader dogs, guard dogs, farm dogs, hunting dogs, and other such dogs, when accompanied by their owner or his authorized agent, while actively engaged in activities for which such dogs are trained, *to stray unless held properly in leash*. [Emphasis added.]

Violation of this statute creates a rebuttal presumption of negligence and shifts the burden to prove conformity with the law to the offending party. *Cassibo v Bodwin*, 149 Mich App 474, 477; 386 NW2d 559 (1986).

We detect no possible grounds (consistent with the court rule) for refusing to permit the amendment. Radcliffe argued from the start that the Herdmans negligently allowed Zelda to run into her yard while dragging the leash. The statute introduced no new theory of liability, no factual development was required to prove a statutory violation, and the Herdmans had "reasonable notice" of Radcliffe's central arguments. Permitting Radcliffe to add statutory and ordinance claims would not deny the Herdmans a fair trial. Moreover, "courts are required to take judicial notice of all statutes of the state. Thus, it is not a fatal defect to fail to plead a statute if the pleadings set forth sufficient facts to show a claim or defense based on the statute." *Id*. at 477 (citation omitted). In *Cassibo*, this Court likened an amendment to add a statutory claim to "procedural 'housekeeping.' " *Id*. And like in that case, Radcliffe's original complaint described the facts necessary to prove the violation.

A court is not bound to take judicial notice of ordinances, but we discern no reason to treat the statutory claim differently than the ordinance claim under the circumstances presented. As to both, the Herdmans would not be prejudiced by the amendment. Accordingly, the trial court plainly erred by denying Radcliffe's motion for reconsideration and to amend her complaint.

## C. THE TRIAL COURT IMPROPERLY DISMISSED RADCLIFFE'S NEGLIGENCE CLAIM

Radcliffe additionally asserts that the circuit court erred by dismissing her general negligence claim. Allan Herdman's admission to Radcliffe's husband supplied sufficient evidence that John Herdman negligently allowed Zelda to run into Radcliffe's yard, and the circuit court erred by not considering it.[1]

In *Trager v Thor*, 445 Mich 95, 106; 516 NW2d 69 (1994),[2] the Supreme Court recognized that under certain circumstances, an animal owner may be liable for injuries caused by the animal if the owner negligently failed to prevent the injuries. The Court in *Trager* explained that "[i]n assessing whether duty exists in a negligence action of this type, it is necessary to keep in mind the normal characteristics of the animal that caused the injury, as well as any abnormally dangerous

---

[1] Radcliffe's testimony regarding the person to whom Herdman made the statement about Zelda is not a model of clarity. She expressed uncertainty regarding whether Allan made the statement to her or to her husband. But we will assume that the statement was made only to Radcliffe's husband.

[2] *Trager* was superseded in part by statute on other grounds as stated in *Amburgey v Sauder*, 238 Mich App 228, 244; 605 NW2d 84 (1999).

characteristics of which the defendant has knowledge." *Id.* at 105. Dogs generally are so unlikely to cause substantial harm that no duty exists "to keep them under constant control." *Id.* at 105-106. Citing 3 Restatement Torts, 2d, § 518, the Supreme Court observed that "a mere failure" to keep a dog under constant control does not constitute a breach "of any duty of care." *Id.* at 106. An animal possessor's duty changes, however, if the possessor knows of a "dangerous propensity unique to the particular animal," or that if placed in a certain situation, "a danger of foreseeable harm might arise." *Id.* The standard of care requires that the animal's owner exercise the amount of control "which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." *Id.* (quotation marks and citation omitted).

Viewed in the light most favorable to Radcliffe, the evidence of her "past behavior" supported that Zelda was known to pull her stake out of the ground, "wasn't a very calm dog," was "very high energy, you know, just, like crazy," and not "a good listener." Radcliffe testified that Allan Herdman had told Radcliffe's husband that the dog had knocked him down twice in a similar fashion. A reasonable jury could find that based on Zelda's puppy-like characteristics and behavioral history, the standard of care required John Herdman to exercise greater caution when removing Zelda's leash from the stake and freeing her to roam.

The circuit court correctly concluded that Radcliffe's recounting of what her husband had told her is hearsay. We note that it is not double hearsay; Allan Herdman's statement is a party admission and not hearsay. MRE 801(d)(2). But exclusion of the statement from consideration at the summary disposition stage was improper because the statement would be admissible at trial if Radcliffe's husband testified at a trial that Allan Herdman had made the statement to him.

MCR 2.116(G)(6) states:

Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1) – (7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion.

In *Maiden v Rozwood*, 461 Mich 109, 124 n 6; 597 NW2d 817 (1999), the Supreme Court explained that under this provision, the evidence offered in support or opposition to summary disposition need not be admissible in "form." Rather, "it must be admissible in content." The Supreme Court noted that this approach is consistent with federal caselaw construing FR Civ P 56. *Id.*

For example, affidavits are generally not admissible at a trial as they contain hearsay. But even if not admissible in form, they may be considered at the summary disposition stage. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). In *Barnard*, the contested evidence was an affidavit submitted with invoices, and was not substantively admissible. The Court explained that "[w]ith a proper foundation, the invoices would be admissible as records of regularly conducted activity." *Id.* at 373-374 (emphasis omitted). Here, Allan Herdman's statement is not admissible in its current form—hearsay. But there is a plausible basis for its admission at trial through the testimony of Radcliffe's husband, and that is what MCR 2.116(G)(6) requires. See *Barnard*, 285 Mich App at 373 ("But Barnard

Manufacturing did not have to lay the foundation for the admission of the invoices in order for the court to consider them on a motion for summary disposition as long as there was a plausible basis for the admission of the invoices."). See also *Celotex Corp v Catrett*, 477 US 317, 324; 106 S Ct 2548; 91 L Ed 2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses."); *Gilmore v Davis*, 185 Fed Appx 476, 484 (CA 6, 2006) ("For instance, if Davis testifies for the defense, his prior inconsistent statements could be introduced substantively pursuant to Fed R Evid 801(d)(1)(A)."); *McMillian v Johnson*, 88 F3d 1573, 1584 (CA 11, 1996) (otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage, "though at trial it must be submitted in admissible form").

At this point in the proceedings, Radcliffe's deposition testimony combined with Allan Herdman's admission establishes the grounds for a common-law negligence claim. If Radcliffe's husband does not testify at the trial and no evidence of Allan Herdman's statement is admitted, her common-law negligence claim may fail. But for now, a question of fact exists regarding Zelda's propensities that precludes summary disposition.[3]

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica

---

[3] Because we ultimately agree with Radcliffe's arguments on these two issues, we need not address her argument concerning the excluded deposition testimony.